IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 1 7 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| GOLDSTAR HOME HEALTH SYSTEM, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 4:12-CV-906-A |
| KATHLEEN SEBELIUS, SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | § § § § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion of defendant,

Kathleen Sebelius, Secretary, United States Department of Health

and Human Services (the "Secretary"), to dismiss the complaint of

plaintiff, Goldstar Home Health System, Inc., pursuant to Rule

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

for lack of subject matter jurisdiction and for failure to state

a claim upon which relief may be granted.  Having considered such

motion, plaintiff's response, the Secretary's reply, plaintiff's

sur-reply, all supporting documents, and applicable legal

authorities, the court concludes that the Secretary's motion to

dismiss pursuant to Rule 12(b)(1) should be granted on the ground

that plaintiff's claims have become moot.

Also pending is plaintiff's motion for class certification, in which plaintiff seeks to maintain this action as a class action on behalf of unnamed parties similarly situated to plaintiff.  For reasons discussed below, the court concludes that the motion for class certification should be denied as moot.

I.

Background

Plaintiff is a hospice care provider located in Arlington, Texas, and provides services to patients in northern Texas, many of whom are eligible for such services through the Medicare program.  The Secretary heads the United States Department of Health and Human Services, which contains the Center for Medicare and Medicaid Services, which in turn is responsible for administering the Medicare program according to the Medicare statute, 42 U.S.C. §§ 1395 et seq.

Hospice care is a benefit covered by the Medicare program, and hospice providers such as plaintiff are reimbursed by the Medicare program for the costs of such care.  The total amount of reimbursement payments a hospice may receive is statutorily capped for each year under the Medicare Statute, 42 U.S.C. § 1395f(i)(2), and this amount is referred to as a hospice's aggregate cap.  If the amount of reimbursement paid by Medicare

2

to a provider exceeds the cap amount for a given year, the
provider must refund the excess amount to the Medicare program.

The regulation that implements 42 U.S.C. § 1395f(i)(2) and
establishes the methodology for calculating the aggregate cap, 42
C.F.R. § 418.309(b), has been the subject of litigation in
numerous courts nationwide during the past several years,[1] and
has recently been amended as a result.  See 42 C.F.R. §
418.309(b)-(d) (effective Oct. 1, 2011); Aggregate Cap
Calculation Methodology, 76 Fed. Reg. 47308 (Aug. 4, 2011).  In
2010, this court held that the methodology in place at that time
for calculating the aggregate cap established by 42 C.F.R. §
418.309(b)(1) (effective through Sept. 30, 2011) was contrary to
42 U.S.C. § 1395f(i)(2), arbitrary and capricious, an abuse of
discretion, and not in accordance with the law.  Lion Health
Servs., Inc. v. Sebelius, 689 F. Supp. 2d 849, 857 (2010).  The
court enjoined the Secretary from prospectively using §
418.309(b)(1) to calculate the aggregate cap for the hospice that
was the plaintiff in that action.  Id. at 858.  The court's

---

[1] E.g., Lion Health Servs., Inc. v. Sebelius, 635 F.3d 693 (5th Cir. 2011); Los Angeles Haven
Hospice, Inc. v Sebelius, 638 F.3d 644 (9th Cir. 2011); Hospice of New Mexico, LLC v. Sebelius, 435 F.
App'x 749 (10th Cir. 2011); Zia Hospice, Inc. v. Sebelius, 793 F. Supp.2d 1289 (D. N.M. 2011); Mission
Hospice, LLC v. Sebelius, CIV-10-0897-HE, 2011 WL 3299090 (W.D. Okla. July 29, 2011); Infinity
Care of Tulsa v. Sebelius, CIV-09-723, 2011 WL 778111, at *5 (N.D.Okla. Feb. 28, 2011); Autumn
Light Hospice v. Sebelius, No. CIV-09-178-M, 2011 WL 102525, at *4 (W.D.Okla. Jan. 12, 2011);
Prairie View Hospice, Inc. v. Sebelius, CIV-09-1234-C, 2010 WL 5125506, at * 2 (W.D.Okla. Dec. 9,
2010).

holding that the methodology was invalid was affirmed by the

Fifth Circuit, <u>Lion Health Servs., Inc. v. Sebelius</u>, 635 F.3d 693

(5th Cir. 2011).[2]

The Medicare statute governing the aggregate cap, 42 U.S.C.

§ 1395f(i)(2) provides:

> (A) The amount of payment made under this part for
> hospice care provided by (or under arrangements made
> by) a hospice program for an accounting year may not
> exceed the "cap amount" for the year (computed under
> subparagraph (B)) multiplied by the number of medicare
> beneficiaries in the hospice program in that year
> (determined under subparagraph (C)).
>
> * * *
>
> (C) For purposes of subparagraph (A), the number of
> medicare beneficiaries in a hospice program in an
> accounting year is equal to the number of individuals
> who have made an election under subsection (d) of this
> section with respect to the hospice program and have
> been provided hospice care by (or under arrangements
> made by) the hospice program under this part in the
> accounting year, such number reduced to reflect the
> proportion of hospice care that each such individual
> was provided in a previous or subsequent accounting
> year or under a plan of care established by another
> hospice program.

42 U.S.C. § 1395f(i)(2).  The prior version of 42 C.F.R. §

418.309(b)(1) provided only one method for calculating the

_____

[2] The Fifth Circuit determined that the court "correctly held that the Regulation was unlawful and correctly enjoined its use as to Lion," but determined that the court was incorrect in ordering the Secretary to refund all payment obligations and should have remanded to the agency to recalculate the amounts. <u>Lion Health</u>, 635 F.3d at 695.

aggregate cap amount:

> Each hospice's cap amount is calculated by the
> intermediary by multiplying the adjusted cap amount
> determined in paragraph (a) of this section by the
> number of Medicare beneficiaries who elected to receive
> hospice care from that hospice during the cap period.
> For purposes of this calculation, the number of
> Medicare beneficiaries includes-
>
> > (1) Those Medicare beneficiaries who have not
> > previously been included in the calculation of any
> > hospice cap and who have filed an election to
> > receive hospice care, in accordance with § 418.24,
> > from the hospice during the period beginning on
> > September 28 (35 days before the beginning of the
> > cap period) and ending September 27 (35 days
> > before the end of the cap period).

42 C.F.R. § 418.309(b)(1) (effective through Sept. 30, 2011).

This methodology, referred to as the "streamlined methodology,"

does not follow the requirements described in § 1395f(i)(2)(C),

that the cap must "reflect the proportion of hospice care that

each such individual was provided in a previous or subsequent

accounting year." 42 U.S.C. § 1395f(i)(2)(C). After several

courts invalidated § 418.309(b)(1), the Secretary determined that

it was in the best interest of the Medicare program to amend the

regulation. On April 14, 2011, the Centers for Medicare and

Medicaid Services issued Ruling CMS-1355-R, entitled, "Medicare

Program; Hospice Appeals for Review of an Overpayment

Determination," and published notice of the ruling in the Federal

Register. 76 Fed. Reg. 26731 (May 9, 2011). The ruling provided

notice of the Secretary's determination to grant relief to hospice providers who challenge the validity of the streamlined methodology, and wish to have a patient-by-patient proportional methodology applied to calculate their aggregate cap. Id. The ruling provides, among other things, that the Medicare contractor who conducts the aggregate cap calculation is required to recalculate the cap under the proportional methodology for those providers who have filed a timely appeal with the appropriate administrative board.[3] Id. The ruling also explains that, because the Medicare contractor is required to do the recalculation under the proportional methodology, the administrative appeals tribunal will no longer have jurisdiction over an appeal challenging the streamlined methodology but must remand such an appeal to the Medicare contractor for recalculation. Id.

After the requisite period for commentary, a final rule was promulgated and published in the Federal Register, and 42 C.F.R. § 418.309 was amended to create a methodology consistent with the

---

[3] Plaintiff was qualified to have its cap recalculated under the proportional method by virtue of its having a properly pending appeal to the Provider Reimbursement Review Board.

requirements of the governing statute and to allow providers to

take advantage of the new methodology, but still continues to

provide an option for the use of the streamlined methodology.

See Aggregate Cap Calculation Methodology, 76 Fed. Reg. 47302,

47308-314 (Aug. 4, 2011); 42 C.F.R. § 418.309.  The regulation,

as amended, provides:

> A hospice's aggregate cap is calculated by multiplying
> the adjusted cap amount (determined in paragraph (a) of
> this section) by the number of Medicare beneficiaries,
> as determined by one of two methodologies for
> determining the number of Medicare beneficiaries for a
> given cap year described in paragraphs (b) and (c) of
> this section:
>
> * * *
>
> (b) Streamlined methodology defined.  A hospice's
> aggregate cap is calculated by multiplying the adjusted
> cap amount determined in paragraph (a) of this section
> by the number of Medicare beneficiaries as determined
> in paragraphs (b)(1) and (2) of this section. For
> purposes of the streamlined methodology calculation--
>
>> (1) In the case in which a beneficiary received
>> care from only one hospice, the hospice includes
>> in its number of Medicare beneficiaries those
>> Medicare beneficiaries who have not previously
>> been included in the calculation of any hospice
>> cap, and who have filed an election to receive
>> hospice care in accordance with § 418.24 during
>> the period beginning on September 28 (34 days
>> before the beginning of the cap year) and ending
>> on September 27 (35 days before the end of the cap
>> year), using the best data available at the time
>> of the calculation.
>>
>> (2) In the case in which a beneficiary received
>> care from more than one hospice, each hospice
>> includes in its number of Medicare beneficiaries
>> only that fraction which represents the portion of

a patient's total days of care in all hospices and
all years that was spent in that hospice in that
cap year, using the best data available at the
time of the calculation. The aggregate cap
calculation for a given cap year may be adjusted
after the calculation for that year based on
updated data.

(c) Patient-by-patient proportional methodology
defined. A hospice's aggregate cap is calculated by
multiplying the adjusted cap amount determined in
paragraph (a) of this section by the number of Medicare
beneficiaries as described in paragraphs (c)(1) and (2)
of this section. For the purposes of the
patient-by-patient proportional methodology--

　　(1) A hospice includes in its number of Medicare
　　beneficiaries only that fraction which represents
　　the portion of a patient's total days of care in
　　all hospices and all years that was spent in that
　　hospice in that cap year, using the best data
　　available at the time of the calculation. The
　　total number of Medicare beneficiaries for a given
　　hospice's cap year is determined by summing the
　　whole or fractional share of each Medicare
　　beneficiary that received hospice care during the
　　cap year, from that hospice.

　　(2) The aggregate cap calculation for a given cap
　　year may be adjusted after the calculation for
　　that year based on updated data.

(d) Application of methodologies.

　　(1) For cap years ending October 31, 2011 and for
　　prior cap years, a hospice's aggregate cap is
　　calculated using the streamlined methodology
　　described in paragraph (b) of this section,
　　subject to the following:

　　　　(i) A hospice that has not received a cap
　　　　determination for a cap year ending on or
　　　　before October 31, 2011 as of October 1,
　　　　2011, may elect to have its final cap
　　　　determination for such cap years calculated

8

using the patient-by-patient proportional
methodology described in paragraph (c) of
this section; or

(ii) A hospice that has filed a timely appeal
regarding the methodology used for
determining the number of Medicare
beneficiaries in its cap calculation for any
cap year is deemed to have elected that its
cap determination for the challenged year,
and all subsequent cap years, be calculated
using the patient-by-patient proportional
methodology described in paragraph (c) of
this section.

(2) For cap years ending October 31, 2012, and all
subsequent cap years, a hospice's aggregate cap is
calculated using the patient-by-patient
proportional methodology described in paragraph
(c) of this section, subject to the following:

(i) A hospice that has had its cap calculated
using the patient-by-patient proportional
methodology for any cap year(s) prior to the
2012 cap year is not eligible to elect the
streamlined methodology, and must continue to
have the patient-by-patient proportional
methodology used to determine the number of
Medicare beneficiaries in a given cap year.

42 C.F.R. § 418.309.

On July 5, 2012, plaintiff was notified that it had exceeded

the statutory cap during the period from November 1, 2009,

through October 31, 2010, by $370,386, and that it needed to

either pay the amount in full or submit a documented request to

enter into an extended repayment schedule within 15 days.[4]   The

---

[4] Unless otherwise specified, the facts alleged are taken from plaintiff's complaint and the
documents attached to the complaint regarding plaintiff's administrative appeal, and do not appear to be

calculation had been done using the streamlined methodology. Plaintiff entered into a proposed five-year repayment plan, began making payments, and had repaid $40,827.82 as of the filing of the complaint in this action.   At some point, defendant notified plaintiff that it had rejected the proposed repayment plan, and would only agree to a two-year repayment plan.

On August 7, 2012, plaintiff filed an administrative appeal with the Provider Reimbursement Review Board ("PRRB"), which is the administrative review panel established to hear disputes regarding such issues as hospice cap determinations.   Plaintiff contested the Secretary's hospice cap determination and her calculation of plaintiff's overpayment, and requested expedited judicial review ("EJR") so that it could raise the issue in federal court.   Plaintiff argued that the methodology the Secretary used in determining plaintiff's overpayment amount was invalid, that the regulation establishing that methodology, 42 C.F.R. § 418.309(b)(1) (effective through Sept. 30, 2011) fails to comply with 42 U.S.C. § 1395f(i)(2), and that the calculation should be set aside as void.   Plaintiff also argued that PRRB was without authority to determine the validity of the regulation, and should grant EJR to allow the courts to consider that issue.

---

in dispute.

10

On August 28, 2012, PRRB issued a determination, stating
that it needed additional information from plaintiff pursuant to
42 C.F.R. § 405.1842(e) in order to render a decision on
plaintiff's appeal.[5]  Plaintiff provided the additional
information on October 24, 2012, and PRRB issued its decision on
November 15, 2012, finding that it had the ability to grant the
relief plaintiff sought because the amended version of 42 C.F.R.
§ 418.309 provided for plaintiff's aggregate cap to be calculated
using the proportional methodology.  In its decision, PRRB stated
that the administrative process would continue, that plaintiff's
case "will remain open" in such administrative process, and that
"the Providers are required to comply with the deadlines
established" in the documents sent to plaintiff.  Compl. Ex. 4,
at 5-6.

On February 19, 2013, after the complaint in this action had
been filed, plaintiff received a revised notice of hospice cap
amount from the Medicare contractor, informing plaintiff that its
hospice cap for the disputed year had been recalculated using the
proportional methodology provided for in 42 C.F.R. § 418.309(c)
(Oct. 1, 2011), and that the reimbursements paid to plaintiff had

---

[5] Under § 405.1842(e)(3)(ii), if a provider has not submitted a "complete request," in which all
necessary information and documents are contained, PRRB must issue a written notice within 30 days of
the provider's request that described further information the provider must submit.

exceeded the cap amount by \$394,579, which was \$24,193 more than the amount that had been calculated using the streamlined methodology.  Def.'s Memo., Ex. A.

## II.

### Plaintiff's Claims

Plaintiff seeks a writ of mandamus pursuant to 28 U.S.C. § 1361 and an order directing the Secretary to calculate hospice cap overpayments in accordance with 42 U.S.C. § 1395f(i)(2), and to refund payments made by plaintiff as a result of the first calculation.  Alternatively, plaintiff seeks a ruling from the court setting aside 42 C.F.R. § 418.309(b)(1) as invalid, and enjoining collection of plaintiff's overpayment using the streamlined methodology.  Plaintiff contends that the regulation amounts to an unlawful taking of private property under the Fifth Amendment, and that the Secretary's conduct violate plaintiff's substantive and procedural Due Process rights, as well as plaintiff's right to equal protection under the law.  Finally, plaintiff alleges that 42 C.F.R. § 405.1842(b)(2), which implements statutory provisions regarding a provider's right to seek EJR of a legal question, is in violation of the governing statute, 42 U.S.C. § 1395oo(f)(1).

Plaintiff also purports to bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil

Procedure on behalf of itself and a class consisting of

healthcare providers participating in the Medicare program which

have allegedly experienced calculation of overpayments under the

streamlined methodology; however, no class has been certified by

the court.[6]

### III.

### Grounds of the Secretary's Motion

The Secretary moves to dismiss the complaint pursuant to

Rules 12(b)(1) and 12(b)(6).  The Secretary contends that the

complaint should be dismissed because plaintiff has not raised

any claim within the jurisdiction of this court, arguing that (1)

plaintiff does not have standing, (2) plaintiff's claims are moot

because the Secretary has granted the relief plaintiff is

seeking, and the conduct plaintiff complains of cannot reasonably

be expected to recur, and (3) plaintiff's claims must be

channeled through the appropriate administrative process as

required by the Medicare statute and binding case law.  The

Secretary also argues that plaintiff fails to state a claim for

relief because the amended cap regulation is valid, and, even if

---

[6] Approximately three weeks after defendant filed its motion to dismiss, plaintiff filed a motion to certify the class.  The court has reviewed the motion to certify a class and all associated filings, documents, and authorities, but will first determine whether it has subject matter jurisdiction over the entire action before ruling on a motion for class certification, and considers only the claim of this plaintiff.  See Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 n.5 (5th Cir. 1993) ("Since there was no class certification, we treat this case as one brought by the named plaintiffs individually."). Issues involving class certification are discussed infra, IV.B.

the court were to conclude that the amended cap regulation were invalid, the only relief plaintiff could receive from the court is the relief plaintiff has already received through its administrative appeal: remand for recalculation under the proportional method.

IV.

Analysis

A.   The Court Lacks Subject Matter Jurisdiction Because Plaintiff's Claims are Moot

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of a plaintiff's complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). An action is properly dismissed for lack of subject matter jurisdiction when the court lacks the constitutional power to adjudicate the case. Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a motion to dismiss pursuant to Rule 12(b)(1), the court may evaluate the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Den Norske Stats Oljeselskap As v. HeereMac V.O.F., 241 F.3d 420, 424 (5th Cir. 2001).

"Article III of the Constitution limits federal 'Judicial

Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395 (1980). Mootness is a question of subject matter jurisdiction, Alwan v. Ashcroft, 388 F.3d 507, 511 (5th Cir. 2004), and if a question of mootness arises, the court must resolve it before it can assume jurisdiction, North Carolina v. Rice, 404 U.S. 244, 246 (1971). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Geraghty, 445 U.S. at 396 (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "If a dispute has been resolved or if it has evanesced because of changed circumstances . . . it is considered moot." American Med. Ass'n v. Bowen, 857 F.2d 267, 270 (5th Cir. 1988). Furthermore, when a challenged regulation has been superseded by a new regulation, "the issue of validity of the old regulation is moot, for this case has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law." Princeton Univ. v. Schmid, 455 U.S. 100, 103 (1982) (quoting Hall v. Beals, 396 U.S. 45, 48 (1969)).

A petition for a writ of mandamus to compel agency action is rendered moot when the agency takes action that grants the relief requested in the petition. Thompson v. United States Dep't of

Labor, 813 F.2d 48, 51 (3d Cir. 1987) (action for declaratory and mandamus relief from hold placed on administrative complaint rendered moot when agency reactivated complaint); Gray v. Office of Personnel Management, 771 F.2d 1504, 1514 (D.C. Cir. 1985) (petition to compel agency decision became moot when agency rendered decision).  See also Singhania v. Holder, No. 3:11-CV-348-B, 2011 WL 5166420, at *4-5 (N.D. Tex. Oct. 6, 2011) (determining that a request for mandamus that U.S. Citizenship and Immigration Services ("USCIS") adjudicate applications for naturalization was moot when USCIS denied the applications, and listing additional cases), adopted, 2011 WL 5222824 (N.D. Tex. Oct. 31, 2011).

In this action, plaintiff's request for mandamus relief and its remaining claims have been rendered moot by the amendment of 42 C.F.R. § 418.309 and the recalculation of plaintiff's aggregate cap.  Plaintiff sought mandamus relief pursuant to 28 U.S.C. § 1361 "to compel Defendant to comply with its nondiscretionary duty to calculate hospice cap overpayments in accordance with 42 U.S.C. § 1395f(i)(2)," and sought rulings from the court based on the application of the streamlined methodology.  Compl. at 16-22.  Plaintiff argues that defendant must apply a patient-by-patient proportional method in calculating the amount by which plaintiff was overpaid, plaintiff

16

admits that defendant has applied such method, and defendant has provided documentation showing that it has performed the recalculation, which plaintiff has not disputed.  Thus, there is no live controversy regarding the calculation of plaintiff's hospice cap, and plaintiff's request for the court to compel recalculation is moot.  Furthermore, the Secretary's actions in granting the relief plaintiff sought also renders plaintiff's additional claims regarding the calculations and payments moot, as none of such claims presents a live controversy appropriate for the court to adjudicate.

Even though the Secretary has granted the relief plaintiff sought, the case is not moot if the originally challenged action is "capable of repetition yet evading review," or falls within the "voluntary cessation doctrine."  United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953); City of Houston v. Dep't of Hous. and Urban Dev., 24 F.3d 1421, 1429-30 (D.C. Cir. 1994).  An agency's action is "capable of repetition yet evading review" when "(1) the challenged action [i]s in duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again."  Weinstein v. Bradford, 423 U.S. 147, 149 (1975).  Under the concept of voluntary cessation, when a defendant has voluntarily stopped the

17

challenged activity, the case is moot if "defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." W.T. Grant, 345 U.S. at 633.

It is clear that there can be no reasonable expectation that plaintiff's hospice cap will be calculated using the streamlined methodology at any point in the future, as the current regulation provides that any hospice which has had the proportional method applied "is not eligible to elect the streamlined methodology, and must continue to have the patient-by-patient proportional methodology used to determine the number of Medicare beneficiaries in a given cap year." 42 C.F.R. § 418.309(d)(2)(i). Thus, not only has plaintiff's cap already been recalculated using the proportional methodology, the regulation mandates that plaintiff continue to have the proportional methodology applied going forward, and there appears to be no likelihood whatsoever that plaintiff could be subjected to the challenged streamlined methodology.

Plaintiff also asks the court to compel the Secretary to "refund collected overpayments improperly calculated under 42 C.F.R. § 418.309(b)(1);" however, the court lacks the authority to take such action.  When the Fifth Circuit held in Lion Health that the streamlined methodology contained in the prior regulation was invalid, the court also ruled that it was an abuse

of discretion for the district court to have ordered the Secretary to refund monies rather than to remand the dispute to the agency for a recalculation of the proper amount, and that "the determination of the amount of refund owed to Lion is a matter properly within the agency's authority." Lion Health, 635 F.3d 693, 703-04. Furthermore, the agency has already recalculated plaintiff's hospice cap liability using the proportional method, and has determined that plaintiff now owes an additional $24,193 to the Medicare program, which plaintiff has not disputed. Thus, the court cannot order the Secretary to refund payments to plaintiff because the agency, not the court, is the appropriate entity to determine payment amounts, and it appears that the agency has determined such payment amounts.

Because all of plaintiff's claims have been rendered moot by the actions of the Secretary in recalculating plaintiff's aggregate cap and overpayment liability, the court does not have jurisdiction over this lawsuit, and must dismiss it. The court notes that, even if plaintiff's claims had not been moot, plaintiff failed to complete the required administrative process, filing suit in this court before the recalculation had been completed at the administrative level. However, in the interests of judicial economy, the court does not delve into a thorough analysis of the administrative process in this case, and is

dismissing plaintiff's claims under Rule 12(b)(1) on the ground
of mootness.

B.    The Purported Class Action Is Also Moot

      Under Fifth Circuit law, the general rule is that "a
purported class action becomes moot when the personal claims of
all named plaintiffs are satisfied and no class has been
certified." Murray v. Fid. Nat'l Fin., Inc., 594 F.3d 419, 421
(5th Cir. 2010).  In such circumstances, "there is no plaintiff
(either named or unnamed) who can assert a justiciable claim
against any defendant and consequently there is no longer a 'case
or controversy' within the meaning of Article III." Id. (citing
additional cases).  Indeed, "a lawsuit brought as a class action
must present justiciable claims at each stage of the litigation;
if the named plaintiffs' individual claims become moot before a
class has been certified, no justiciable claims are at that point
before the court and the case must as a general rule be dismissed
for mootness." Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d
1030, 1046 (5th Cir. 1981).  A "limited exception" to this
general rule applies to situations in which "the defendants have
the ability by tender to each named plaintiff effectively to
prevent any plaintiff in the class from procuring a decision on
class certification." Murray, 594 F.3d at 421.  Such situations
typically involve inherently transitory claims or cases in which

defendants tender the named plaintiffs their personal claims.
See Grant ex rel. Family Eldercare v. Gilbert, 324 F.3d 383, 389
n.11 (5th Cir. 2003); Zeidman, 651 F.2d at 1048.  An inherently
transitory claim is one where "there is a constantly changing
putative class," Sze v. Immigration and Naturalization Serv., 153
F.3d 1005, 1010 (9th Cir. 1998) (citing Gerstein v. Pugh, 420
U.S. 103, 110, n.11 (1975)), and where "the trial court will not
have even enough time to rule on a motion for class certification
before the proposed representative's individual interest
expires." Geraghty, 445 U.S. at 399.

    In this action, plaintiff's claims and those of its proposed
class do not present the court with a live controversy, and are
moot.  The court has not certified the proposed class, and does
not intend to do so, finding that the entire action is moot, and
also that, even if live claims remained, plaintiff has not
satisfied the requirements of Rule 23 of the Federal Rule of
Civil Procedure regarding class certification.[7]  This is not the
type of case where a defendant has attempted to satisfy the
claims of a named plaintiff in order to prevent a class action
from continuing: the Secretary has permanently amended the
regulatory scheme to provide relief for plaintiff and for

---

[7] Because the entire action is moot, the court need not engage in a lengthy analysis of the
application of Rule 23 requirements to the action.

similarly situated hospices.   Nor is it the type of case that is inherently transitory, as the amended regulation and the recalculations that have been done pursuant to such regulation provide no indication that hospices like plaintiff will be changing constantly.   Hospices similar to plaintiff--those with properly pending appeals challenging the calculation made with the streamlined methodology--fall under this amended regulatory scheme and can undoubtedly expect to have their aggregate caps recalculated, if such caps have not already been recalculated. See Sze, 153 F.3d at 1009-10 (entire action dismissed for mootness when federal agency had changed its procedures, and the claims of the named plaintiffs and putative class members had been or were continuing to be resolved).   The court further notes that plaintiff's claims were moot well before plaintiff filed its motion to certify the class on April 4, 2013, as PRRB remanded plaintiff's administrative appeal for recalculation under the proportional method on November 15, 2012, and the recalculation had been completed and mailed to plaintiff on February 19, 2013.

Accordingly, the court concludes that the Secretary has granted the relief to which plaintiff was entitled, and plaintiff's claims must be dismissed as moot.

V.

<u>Order</u>

Therefore,

The court ORDERS that the Secretary's motion to dismiss plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure be, and are hereby, dismissed as moot.

The court further ORDERS that plaintiff's motion for class certification be, and is hereby, denied as moot.

SIGNED June 17, 2013.

_____
JOHN McBRYDE
United States District Judge

23